Good morning again. I'm representing Mr. Shane Massey. We have a number of issues that we argued in our appeal. I'm going to begin by addressing the issue of magistrate jurisdiction unless the court would like me to begin elsewhere. It's interesting that he now is interested in a lawyer. How did he get along with Mr. Massey? Very well, Your Honor. Very well. There was no jurisdiction for the magistrate's judge determination in this case. There was no local rule involving or allowing the delegation of this duty to the magistrate judge to make a final order saying that Mr. Massey had waived counsel. There was no actual referral from the district court judge in this case to the magistrate judge to perform this duty. And there's no statutory grant of authority which encompasses this duty. There was no waiver of an Article III judge sought from Mr. Massey, no consent from him to allow the magistrate judge to make this important determination. The case decided this summer, July 20th, I think was the date of the decision of the Rivera. And Rivera-Guerrero provides in many ways a good analytical framework for the magistrate, the Federal Magistrate Act. And in that case, this circuit determined or helped determine whether or not the issue is one that is delegable essentially to a magistrate judge. I think under Rivera and its reliance on Riggins v. Nevada, this Court would have to conclude that this issue, the determination as to whether or not a defendant has conclusively waived his right to counsel is a final decision on a dispositive matter. Counsel, this, of course, is a difficult factual case. Let's say you're right on this jurisdictional matter. Clearly, the magistrate could have appointed counsel. That's for him. That's clearly something that could have been done. And that's the way the whole thing started out. But your counsel, your client has some very odd notion of what assistance of counsel means. So eventually, in talking with your client, the magistrate gave him all of the what we would consider the Feretta warnings and rights and that kind of thing, and really wanted to appoint counsel for him. They'll have nothing to do with it. He doesn't want appointed counsel. He doesn't want hired counsel. He doesn't want any kind of standby counsel. So finally, he says, well, you've waived your right. So then it goes over to the district court judge, and he has an opportunity to get counsel then. Every opportunity is given to him. And he says, no, I don't want this standby counsel you've appointed for me. I don't want appointed counsel. I don't want retained counsel. I want assistance of counsel. So the judge says, well, you've heard from the magistrate all of the Feretta warnings, did a very good job there. Sounds like there's nothing that I can do except appoint standby counsel. So maybe we don't even have to get to this jurisdictional part of whether the magistrate did or did not have jurisdiction. Putting those two things together, your client had absolutely full advice, full warning, and full opportunity. So as a judge, I find it difficult to think that we should say, well, because the magistrate appeared to be giving a Feretta warning and allowing you to proceed on your own, that we should upset anything. I'm just having trouble. Well, I guess I'll take that piece by piece, Judge Fletcher. First of all, I think that when this defendant obviously made very many contradictory statements, on the one hand, he did tell the judge that he had attempted to get a lawyer and hadn't been able to find one, I guess, with whom he was in concert or had the same views. It wasn't entirely clear what the problems were in terms of his attempts to get a counsel. This is between his first initial appearance, arraignment, and the continued representation hearing. But he talks about how he's gone and talked to lawyers. And he also says that he's not capable of representing himself. In fact, his background fully supports that. So he's making wholly contradictory statements. And the question is, what does the magistrate have to do in those circumstances, I guess, as a practical matter? As a practical matter, Kienenberger answers that. Where the defendant's statements are not clear and unequivocal in terms of his wishes to represent himself, and he kept on saying, I don't want to represent myself, then you go ahead and you appoint a lawyer. And that's what happened in Kienenberger. But Mr. Kienenberger, who's another Alaska case, I should say, another defendant from Alaska, he said, I don't want a lawyer. I want assistance of counsel. I want standby counsel. And because the Court did not hear that as a clear and unequivocal wish that he wanted to represent himself as his own lawyer, he appointed a lawyer, and this Court upheld that. There's another solution to this problem, and that's one that this Court undertook, actually, in this case. And it has the district court has undertaken it in a number of cases in Alaska, which is that where an individual, for whatever reason, doesn't want to apply for appointed counsel on the basis of indigency, and perhaps they don't want to complete the financial affidavit, the courts have made decisions to appoint counsel where they don't hear that clear and unequivocal waiver, making the defendant then responsible financially for the cost of such representation. So there are things to be done. With respect to your characterization of the record as to what the district court judge did, I have to say respectfully I'm in disagreement as to what the record shows, because what the trial judge did was he – and we should go over the chronology here, because we had a determination 33 days before trial that Mr. Massey had waived his appointed counsel, and he was never told that that was any sort of a tentative finding. He was told it was a final order, that's it, you're representing yourself. This is a person who doesn't have any experience with the system. That's my final decision, and it's presented consistently as a final order. When he goes before the district court judge, the district court judge does not suggest to him that that order is subject to reconsideration. He said, you've made your decision. You told Judge Branson your decision. That's done. We're ready for trial. We're going to trial in one week. And he kept on reiterating essentially that the decision had been a fait accompli. Now, on the day of trial, the district court judge says to him, you know, I was hoping you'd rethink this, but this particular individual with his lack of experience, lack of familiarity with the system, certainly had no information from the court that that decision was something that could be reconsidered or revisited. And there is no – and it really is not a de novo review that we see from the district court judge in any event. We see mention that he's reviewed the transcripts, but we see total deference to the magistrate judge's final decision that he waived or relinquished his right to counsel. So I would disagree with you that basically even if the magistrate judge didn't have the right to do it, the district court judge did it right. With respect to the actual inquiry under Ballot, I don't know if I'm saying that case right, but the Ballot case, in fact, the inquiry made by Judge Branson, although it seemed in many ways pretty comprehensive, was lacking in key respects. And those deficits have been characterized by this Court as presumptively prejudicial, which is that there wasn't any inquiry of Mr. Massey about his prior experience. What we find out from the PSR after the fact is that this is an individual with no criminal history, apparently no experience as a civil litigant, apparently never represented by an attorney before. It's not clear he's ever been on the inside of a courtroom, ever. Those were things that we should have found out in that initial colloquium. They were never developed. There was no discussion of the penalties with respect to the imposition of consecutive sentences by the judge or by anyone else. Well, the magistrate asked the U.S. attorney to tell him what the penalties were. That's correct. But we don't have any discussion of the fact that those sentences could all be stacked. In fact, they partially were. And there was absolutely no exploration as to Mr. Massey's comprehension as to the nature of the charges that he was facing. And all of these under Bellow are basis for reversal. I see that I've gone halfway through. I know that there are many issues on my list. I did want to make a very brief clarification that I'm withdrawing the argument as to the guidelines not allowing consecutive sentencing. Iniquiz clearly does settle that issue, and I just want to clarify that I've withdrawn that argument. Obviously, I would like to argue that that remand would be indicated under Booker and Ameline. And there's also the Kassoof-Aguilar issue as well. But I'll reserve my time. Mr. Galley, go ahead, please. Thank you, Your Honors. And may it please the Court again, I'm Brian Galley on behalf of the United States. And we usually don't seek unfair advantage.  I have one here with my opposition having had to argue three times. Either way, I do have three brief legal points that we'd like to emphasize. And before that, I should mention that Shane Massey was a successful chiropractor who decided he wasn't going to pay any taxes. And when the IRS tried to collect, he threatened his bank's IRS agents and even an assistant U.S. attorney with an assortment of lawsuits and some vaguely menacing language. So that sets the actual background for the case. And I just want to talk about, as I mentioned, those three legal points. And then I want to talk a little bit about the state of the record that my adversary brought up. The first legal point that we want to mention is we think that this argument about the magistrate judge's jurisdiction is really a red herring. And the reason it's a red herring is essentially, I think, for the reason that Judge Fletcher suggested, which is that the district court here reviewed the transcript of the proceedings before the magistrate judge. And he found that the defendant had waived his right during those proceedings. And then when the defendant appeared in front of him personally, he confirmed the district court confirmed that impression. So the magistrate judge's jurisdiction is irrelevant. The district court found that the defendant had waived his right to counsel throughout. The second point we just want to highlight is we think there's really no question that he did actually waive. The magistrate judge gave him a choice. You can have a lawyer or you can represent yourself. And he said, I don't want a lawyer. Now, ordinarily, Your Honor, I think the rules of logic suggest that if I make you an offer of A or B and you say I do not want A, you have selected B. If it's clear to you that there's only a universe of two choices and you reject one, it's tremendously obvious that you've selected the other, even if out of stubbornness or some obscure legal strategy you want to deny that fact. And we cite a lot of cases to that effect in our brief. We think, by the way, the most cogent analysis probably of the issue was by Judge Sutton in an unpublished opinion by the Sixth Circuit. The Sixth Circuit does allow citation of their opinion. And the last point that we just want to mention is that we don't think that the Court needs to reach these 7212A issues. We don't need to get into the Souf case. And that's because there is overwhelming evidence, we think, that the defendant ---- I'm sorry? I'm sorry. Why don't we have to reach them? Because there's overwhelming evidence that the defendant in fact threatened or attempted to intimidate specific IRS officials who were actually investigating him, and the indictment alleged that. And so any error in the 7212A instructions was harmless beyond a reasonable doubt and certainly wasn't plain. I just want to respond, if I may, to a couple of my adversary's characterizations of the record as well. In the case of Judge Sutton, she said that Mr. Massey was under the impression that once he had made his choice in front of the magistrate judge, that choice was final and irrevocable. And that certainly doesn't square with my reading of the final pretrial conference, where, for example, at page 91 of the excerpts of record, the district court said, you're free to go get an attorney. And at page 93 of the excerpts of record, he said, you have plenty of time to hire an attorney. And so I think it was clear to the defendant that the door was still open to him. He just didn't want to see the door. And another point, and I think this is important from my analysis before, is my adversary suggested that there wasn't a real de novo review by the district court. But I think if you look at the record of the final pretrial hearing, and again, especially at the onset of the trial, the district court was really trying very hard to persuade the defendant to accept counsel. And he really pushed pretty hard. And I think that it's hard to see that dialogue and not think that the district court was looking for every opportunity and every insight he could get into why the defendant was acting as he was. Lastly, I guess I should ask if the panel has questions about the implications of the United States against Booker to the sentence here. I know Your Honor is familiar with the Ameline opinion. Well, there are a lot of difficult sentencing issues being debated around the country and in the circuit. I don't really have questions right now. But presumptively, I feel as one judge that we have to remand under Booker. So if you think we don't have to remand for resentencing under Booker, you should let me know or you should let us know your argument. Our position is that you should not remand. And respectfully, we believe that the decision in Ameline was mistaken because we think it overlooks cases like Nieder against the United States. And Nieder, as Your Honor probably recalls, is technically a harmless error case. It's a harmless error case. But it has implications for plain error because the third prong of the plain error test is whether or not the error below affected the defendant's substantial rights. But, of course, we would have to apply Ameline unless it were reassessed in bank, I suppose. That's right. We definitely don't argue that you're free to disregard Ameline. And we know that there's sort of an asterisk in Ameline that says there might be some extraordinary case where remand wouldn't be warranted, and it's not clear why this would be that case. So we concede absolutely that you're currently bound by that. I should say that I know that the government is seeking rehearing. I don't know that we filed our petition today or not. Right. It's seeking rehearing, I think. And we're also going to ask in that that this Court hold all sentencing cases pending its disposition of the petition for rehearing today. So maybe it doesn't make a whole lot of sense for me to get into the nuances of what the harmless and plain error argument is. Actually, I don't know if the government's filed its petition yet, but I'd assume from something that they were going to be filing a request for rehearing in bank, and we will probably not dispose of the sentencing issue in this case until the dust settles on Ameline. All right. Maybe it's useful for me to give you maybe a one-sentence summary of what our argument would be, which is that there's nothing in the record that would show that the district court would give a different sentence if this case were remanded, and therefore he can't carry his burden under that third prong of the plain error test. Maybe you'd give a higher sentence. That's right. It's conceivable. I guess this actually brings to mind one other thing. I don't know if when Ms. Geddes gets up, she's going to renew her motion for bail in light of what I've just said. So maybe I should say this. The Seventh Circuit, before the Booker decision came down, had a decision, the name of which is escaping me offhand, but I'm sure I could submit it to the panel, and essentially what they said was that it's likely that the district court would be in the best position to decide what the sentence on remand would be likely to be, and since in order to obtain release pending the disposition of the appeal, the defendant has to show that the new sentence is going to be shorter than the duration of the appeal, it makes sense that the district court's in the best position to decide that question initially. So what's the timing on his sentence? It's a 41-month sentence. I believe he's been serving it since imposition, and the date of that, I believe, is September 16th of 2003, so about 19 months. So he has about 22 months left on that sentence. So in short, we think that maybe the most sensible thing would be to refer the bail motion to the district court in the first instance. The district court would know if it's likely to impose a sentence of less than 28 months, let's say, and if it thought it was, then it would probably grant bail. Did you think the defendant was playing games when he said, I want assistance of counsel, I don't want an attorney? That's what the district court found, Your Honor, and I think the response of some of the rooms suggests that that's probably right. Sounds to me as though he had some kind of psychological problem. Well, I don't think that's it, Your Honor. What the district court found and said on the record was that this is a strategy that's been employed by other individuals who share defendants' views about the tax laws, and it's probably one that he was employing at their suggestion. Okay. Well, we're not going to require you to use all your time. Thank you, Your Honor. Thank you. Thank you. Ms. Kelley. Thank you, Your Honor. The court would know whether or not Mr. Massey had a psychological problem. Certainly, this was something that was suggested to the jury. How did he wind up having an attorney? Beg your pardon? How did he wind up having an attorney? On appeal? He doesn't want an attorney. He wants counsel. No, actually, he said he didn't want to represent himself. What he said with respect to an attorney was entirely confusing and paradoxical. But he repeatedly and adamantly said he didn't want to represent himself and wasn't capable of representing himself. And as to whether or not he had some sort of psychological problem, we don't we the magistrate judge wouldn't really know that because he didn't engage him in any sort of an inquiry as to what his background was to determine whether or not he understood his decision or understood any decision. At the time the district court made the comments that have been referenced by opposing counsel, the case was already well underway. The district court took a look at Magistrate Branson's comments prior to the pretrial hearing, which was 10 days before the scheduled trial date, and made the comments on the record about how you chose not to be represented by counsel, you were given an offer before Magistrate Branson. At that point, 10 days before trial, pretrial, the time for filing a pretrial motion had already come and gone. It was already decided. And there were extremely important and critical proceedings prior to trial that Mr. Massey didn't have a representation. So this belated ad hoc or post hoc, I should say, comments by the district court judge may go to the issue of representation at trial, but they certainly don't go to representation prior to trial in the important pretrial proceedings where Mr. Massey could have brought different challenges to the indictment. I don't agree with counsel, of course, that what the Court conveyed to Mr. Massey was anything approaching a de novo review. And the Court will just say that. Kennedy. I'm sorry, I didn't hear your last clause. Was anything related to a de novo review. I think the comment, if the Court would read the references by Judge Weislein, I think it will see that he's describing it strictly as a fait accompli, a done deal. With respect to the issue of a remand under Booker, I think the way Anne Moline put it was could this Court stay with certainty that Mr. Massey would receive the same sentence in the absence of mandatory guidelines. There clearly was a Booker error in this case. Based upon the facts found by the jury, Mr. Massey would be in the zero to six-month sentencing range. He ended up in the 37 to 46-month sentencing range because of judge findings at sentencing. He was 61 at the time of his first criminal conviction. He suffers from heart problems, ulcers or so was reported to IRS, and that's reflected in the pre-sentence report. He was remanded at the time of the jury verdicts even though he voluntarily appeared at all court proceedings. No criminal history, and these were nonviolent offenses. I think there's no question that a counsel, counsel arguing him, competent counsel representing Mr. Massey at sentencing would be arguing that basically the aberrational nature of this conduct and medical disabilities, perhaps need for medical services, could operate in favor of a very different kind of sentence. Indeed, at sentencing, the assistant United States attorney talked about how this is the kind of case, how much it was a shame, basically, that this case had come to the point it had come to. Mr. Bradley said that this is the kind of case where typically we do find probation to be appropriate, where you have an individual who has no criminal history, these kinds of offenses. He did remark upon his lack of remorse indicating a need for some deterrence and some period of incarceration, but he suggested that really this is kind of a probation ordinarily would be kind of a probationary kind of disposition that would be appropriate for an individual like this. So all of that suggests to me, yes, Mr. Massey would has a good chance of receiving a sentence other than a 41-month sentence of incarceration if it is remanded. With respect to the Kassoff-Aguilar case, I would draw the Court's, very briefly, would draw the Court's attention to the indictment in this case. In the indictment in this case, among the acts specified by the government and among the acts considered by the jury in their determination as to whether or not a conviction under 72112A is supported is a 1996 claim in correspondence apparently that was unprompted. It simply was an assertion of rights or a declaration of independence from the tax laws that Mr. Massey went ahead and sent to the IRS, apropos of nothing, apparently. He sent in a letter to the IRS saying that he wasn't subject to the tax laws of the United States, he was not a citizen or resident of the United States, he was not required to pay the income taxes, taxes were involuntary, and he did not want to be referred to and threatened to sue if he was referred to as a tax protester. This was a letter that had absolutely no connection. It was not preceded by any instigation of any sort of investigation or correspondence with him. And this is being relied upon as an act for corruptly endeavoring to impede the administration of the tax laws. It's exactly this kind of act, kind of hanging there in a vacuum, which requires the kind of analysis that the Sixth Circuit adopted in Cassoof following Aguilar that there be an established nexus to proceedings, some form of proceedings underway by IRS. And it's on that, on the basis of that allegation and the reasoning in Cassoof that I would ask you to find, because this matter I think hopefully will be remanded for a new trial, that the jury should be differently instructed the next time around. I don't know if the Court has any specific inquiries to the record I can answer. I don't, no. Thank you. I would be asking the Court to release Mr. Massey if the Court does order a new trial in this case. We did make a request to the Ninth Circuit previously to the motions panel for his release. What happened on the motion to the motions panel? Was it referred to us? I filed it right after Blakely, and it was denied by a two-judge motions panel. Is he in jail now? He's been in jail since the day the verdicts were announced, was not given the opportunity to, he didn't ask for bail or release, apparently didn't know that was available. He's been in there, so he's been in jail now 19 months. So did the motions panel refer the bail motion to our merits panel, or did they just deny it? They just denied it. So are you renewing it at this point? I am renewing it. Okay. And as I understood, Mr. Galley was urging us to remand that to the district court. Well, I would ask for this Court to consider the issue of his release pending trial. All of the information regarding his history was provided to the circuit court, albeit to the motions panel, making an argument as to why he should be released. Certainly, there's nothing in his history that suggests any problem in his ability to appear for future proceedings. And so I would ask that the Court look at the information that's already been provided apropos of release pending further proceedings and consider that. Thank you. Thank you. That case, Massey, United States v. Massey will be submitted.
judges: B. Fletcher, Gould, King